**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**7108 WEST GRAND AVENUE, CHICAGO, ILLINOIS, Defendant,**

**Feliberto Flores and Isabellita Flores, Claimants–Appellants.**

**No. 92–4160.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 17, 1993.

Decided Jan. 25, 1994.

James M. Kuhn, Asst. U.S. Atty., Chicago, IL, for U.S.

Allan A. Ackerman (argued), Joelle Hollander, Chicago, IL, for Isabellita Flores and Feliberto Flores.

Before PELL, CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Claimants in this forfeiture proceeding pose the question whether their former attorney's gross negligence in representing their interests entitles them to another opportunity to litigate. The answer is No. Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary.

Feliberto Flores is in prison for federal drug offenses. See *United States v. Flores*, 5 F.3d 1070 (7th Cir.1993). The United States began forfeiture proceedings against three parcels of real property in his name, contending that they had been acquired with the proceeds of his drug business. Feliberto contends that he and his wife Isabellita retained Robert Habib to represent them in the forfeiture proceeding. Habib did not file a timely claim on Feliberto's behalf with respect to any of the three properties, and he filed a verified claim on Isabellita's behalf with respect to one parcel only. The United States filed a motion for default judgment concerning the property at 7108 West Grand Avenue (which is, by virtue of a Rule 54(b) judgment, the sole parcel in dispute on this appeal). Habib filed papers in opposition on behalf of Isabellita but did not contend that she has an ownership interest in the property. Feliberto is the sole record owner; Isabellita contends that an attorney other than Habib neglected to transfer a joint tenancy interest to her name. Habib did not request a stay under 21 U.S.C. § 881(i), which applies when a criminal proceeding is ongoing against a claimant. Neither Habib nor Isabellita appeared at the hearing on the motion for default judgment, which the district court granted. (Habib says that he had a conflicting engagement in another court, but this would be a reason to ask the court for a postponement, not to ignore the hearing.) Habib did not file a timely notice of appeal.

Represented by new counsel, Feliberto and Isabellita filed a motion under Fed.R.Civ.P. 60(b) for relief from the judgment. They blamed the lack of timely claims on Habib, and they contended that each had a good defense to the forfeiture action: Feliberto

that he paid for the property with lottery winnings rather than drug money, Isabellita that she is an "innocent owner" under 21 U.S.C. § 881(a)(6). Cf. *United States v. 92 Buena Vista Avenue*, —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). The district court denied this motion, and the notice of appeal, filed within 60 days, is timely. *United States v. One Urban Lot*, 882 F.2d 582, 583 (1st Cir.1989).

■ Feliberto and Isabellita insist that Habib was grossly negligent—that his acts were worse than merely negligent but short of intentional misconduct. They characterize Habib's efforts in this way in an effort to avoid the principle that an attorney's errors and misconduct are attributed to his clients. The clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds. So much is clear for an attorney's wilful misconduct. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Societe International v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958); *Barnhill v. United States*, 11 F.3d 1360, 1366 (7th Cir.1993). It is equally clear for negligent errors. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, —— U.S. ——, ——, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993); *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). See also, e.g., *Ball v. Chicago*, 2 F.3d 752, 756 (7th Cir.1993). None of these cases involves gross negligence, which the appellants see as an opening.

■ Yet why should the label "gross" make a difference to the underlying principle: that the errors and misconduct of an agent redound to the detriment of the principal (and ultimately, through malpractice litigation, of the agent himself) rather than of the adversary in litigation? We know how to treat both ends of the continuum: negligence and wilful misconduct alike are attributed to the litigant. When the polar cases are treated identically, intermediate cases do not call for differentiation. Holding that negligence and wilful misconduct, but not gross negligence, may be the basis of a default judgment would make hay for standup comics. No lawyer would dream of arguing on behalf of a hospital that, although the hospital is liable in tort for staff physicians' negligence and intentional misconduct, it is not liable for their "gross negligence." The argument makes no more sense when presented on behalf of a lawyer or litigant.

It is the polar cases, and not the intermediate ones, that sometimes lead to special rules. Wilful misconduct by an employee— for example, a department store clerk who shoots a customer in a fit of pique—may be outside the ordinary scope of employment, and consequently may not lead to vicarious liability. Perhaps the same approach would govern if one lawyer punched another during a contentious deposition. At the other end of the spectrum, a single harmless error—for example, a brief filed one day late—does not lead to the loss of the case, because the proper penalty depends on the harm done and the alternative means of deterring similar mishaps, a point we stressed in *Ball*, 2 F.3d at 758–60, and *Barnhill*, 11 F.3d at 1366–69. From this perspective, however, the case for basing the disposition of a suit on a lawyer's blunders is most powerful when those errors could be called "gross negligence." Such delicts require stern measures to deter, they are apt to (and here did) substantially interfere with ordinary adjudication, and yet the misconduct is not so extreme that it is outside the scope of the lawyer's engagement. "Holding the client responsible for the lawyer's deeds ensures that both clients and lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either." *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986). See also *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985) (client may be penalized when lawyer files a tardy tax return). A distinction between ordinary and gross negligence would put an end to "mere" negligence in federal litigation but would create a land office business in gross negligence.

Although none of our cases squarely holds that a lawyer's gross negligence does not justify reinstating a case, we have come right up to the brink. E.g., *Nelson v. City Colleges of Chicago*, 962 F.2d 754, 756 (7th Cir. 1992) ("[W]e continue to cast serious doubt on the theory that an attorney's gross negligence warrants relief under Rule 60(b)."); *United States v. DiMucci*, 879 F.2d 1488, 1496 (7th Cir.1989) ("It seems clear to us that the law in this circuit is that an attorney's conduct must be imputed to his client in *any* context.") (emphasis in original). Today we leap. It is unnecessary to ask the district court to determine where on the line from "mere" negligence to intentional misconduct attorney Habib's handling of this litigation falls, because the answer does not make any difference.

■ Perhaps anticipating that we would not be impressed with the proposed distinction between ordinary and gross negligence, appellants' new lawyer contends that the Constitution itself guarantees effective assistance of counsel in forfeiture proceedings. The argument encounters several obstacles. First, it was not raised in the district court. Second, it is inconsistent with the language of the sixth amendment, which reads: "In all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." This is not a criminal prosecution, and neither Feliberto nor Isabellita is an "accused." That forfeiture may be a "penalty" does not distinguish it from treble damages in antitrust cases, punitive damages in tort cases, and like dispositions that do not convert civil to criminal litigation. See, e.g., *Browning-Ferris Industries v. Kelco Disposal, Inc.*, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (excessive fines clause of the eighth amendment does not apply to punitive damages in civil cases). Third, although "those protections associated with criminal cases may apply to a civil forfeiture proceeding if it is so punitive that the proceeding must reasonably be considered criminal", *Austin v. United States*, — U.S. —, — n. 4, 113 S.Ct. 2801, 2805 n. 4, 125 L.Ed.2d 488 (1993), the Supreme Court has so far been unwilling to deem forfeiture proceedings "criminal" for the purpose of counsel—a point footnote 4 to *Austin* makes.

See also *United States v. Zucker*, 161 U.S. 475, 480–82, 16 S.Ct. 641, 643, 40 L.Ed. 777 (1896) (confrontation clause of sixth amendment does not apply in forfeiture proceedings). The sixth amendment does not entitle owners to counsel at public expense whenever the government lays claim to their property; there is accordingly no foundation for imputing the actions of the Flores' chosen lawyer to the government, an essential step in the ineffective-assistance doctrine in criminal cases. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

AFFIRMED.