UNITED STATES of America,
Plaintiff–Appellee,

v.

8136 S. DOBSON STREET, CHICAGO,
ILLINOIS, et al., Defendants,

Rodney Anderson, Appellant.

No. 96–3854.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1997.

Decided Sept. 24, 1997.

Anthony J. Masciopinto (argued), Office of the United States Attorney, Civil Division, Chicago, IL, for Plaintiff–Appellee.

David L. Mandell, Rick B. Meier (argued), Mandell, Ginsberg & Meier, Madison, WI, for Defendants–Appellants.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Rodney Anderson appeals from the district court's denial of his motion for relief from forfeiture judgments against property he claims to own. Because Anderson was not a party, and thus lacked standing to file for such relief, and because he was not entitled to the relief in any event, we affirm the district court.

## I.

Rodney Anderson conspired to manufacture and distribute phencyclidine. As a result of this activity, he was indicted, tried, convicted, and sentenced. We affirmed his conviction and 262–month sentence in an earlier decision, *United States v. Hubbard*, 22 F.3d 1410 (7th Cir.1994), *cert. denied*, 513 U.S. 1095, 115 S.Ct. 762, 130 L.Ed.2d 660 (1995). Shortly after Anderson was indicted, the United States Attorney's Office filed a civil forfeiture complaint against three parcels of real property and twelve vehicles which the complaint alleged were either proceeds of or facilities used in the furtherance of Anderson's narcotics trafficking.

On behalf of several of Anderson's close relatives, Anderson's attorney, Chester Slaughter, filed verified claims to the three real properties, located in Chicago, and two of the three vehicles that had been located and seized by the government; he filed no claims on behalf of Anderson. Specifically, Rodney's mother Lorraine Anderson and his brother Willie Anderson filed a claim to property at 8136 South Dobson. Lorraine also filed a claim to the property at 13904 Tracy and a 1984 Ford tow truck. Rodney's wife Valarie Anderson filed a claim to 1633 E. 91st Street. Brenda Anderson, Rodney's sister, filed a claim to a 1989 Volvo. No claim was filed on a 1968 Chevrolet Camaro.

Another car was claimed by GMAC. To date, the government has not located the other eight vehicles, nor has anyone ever filed a claim on them.

At the time he filed the claims, Slaughter represented that he was acting as counsel for claimants Lorraine, Willie, Brenda, and Valarie Anderson (collectively the "Anderson claimants"). He also notarized the signatures of the various Anderson claimants. (Apparently, these signatures were not those of the claimants and evidence suggests they were signed either by Slaughter or someone working with him.) Although he entered an appearance on behalf of Rodney Anderson in the civil forfeiture action, Slaughter filed no claims on his behalf. Slaughter then represented Rodney Anderson throughout his criminal trial. Nothing much happened with the forfeiture action until after Rodney Anderson was convicted in March 1992. Soon after, the government filed a motion for default judgment and a decree of forfeiture against the Camaro, on which no one had filed a claim. Subsequently, the court entered the default judgment against the car.

In June 1992, following the default judgment on the Camaro, the Anderson claimants released Slaughter as counsel. (In an affidavit, Rodney Anderson claims he released Slaughter sometime before June 1992, when he failed to file proper motions and notify him about the status of "[my] and my family's properties.") Through new counsel, Thomas Royce, "the claimants" filed a motion to vacate the default judgment on the Camaro, even though none of them had ever filed a claim on the car. The district court refused to vacate the judgment and decree of forfeiture after none of the Anderson claimants filed any pleadings beyond the initial motion filed by Royce.

In May 1994, the government filed a motion for default judgment and a decree of forfeiture against the tow truck. Lorraine Anderson, on whose behalf Slaughter had filed a claim to the truck, had died and no one had filed a claim as her heir. The dis-

trict court granted the government's motion. In June 1994, despite never having filed a claim to it, Rodney Anderson filed a pro se motion to vacate the default judgment against the truck. One month later an unnamed claimant filed a similar motion through attorney George Pappas. The district court denied both motions, as well as another motion filed by Pappas to vacate the order denying the motions to vacate.

Also in May 1994, the government moved for summary judgment against the real property at 13904 Tracy. The court entered summary judgment for the government, rejecting a response brief filed by Brenda Anderson as procedurally and substantively deficient. Brenda Anderson's brief, in which she claimed to be the "heir [of Lorraine Anderson] and party-in-possession," was filed seven weeks late and was not accompanied by any local rule 12(N) statement.

The government also filed a motion for summary judgment against the 1633 East 91st Street property. The motion and accompanying exhibits indicate that Valarie was the sole claimant of the property; that the property was in fact held in trust for beneficiary Rodney Anderson; that a beneficiary of such a trust is considered by law to be the true owner; that Valarie lacked standing to assert an interest in the property; and that Rodney Anderson had never filed a claim to the property. Valarie Anderson failed to file any response brief opposing summary judgment or any local rule 12(N) statement.[1] Accordingly, the district court entered summary judgment for the government. The district court later denied a motion filed by attorney Pappas on behalf of unidentified claimants to vacate the ruling.

In the meantime, based on the claims filed by Slaughter on behalf of Brenda Anderson asserting that the Volvo was hers, the government entered a settlement agreement releasing the car to her in March 1994. Likewise, based on the claim to 8136 South Dobson filed by Slaughter on behalf of Lorraine Anderson and Willie Anderson,

---

1. United States District Court for the Northern District of Illinois' Local General Rule 12(N) requires a party opposing summary judgment to serve and file certain pleadings and supporting materials. *See Brasic v. Heinemann's Bakeries,* 121 F.3d 281, 283 (7th Cir.1997) (explaining in detail the requirements of rule 12(N)).

in May 1994 the government moved to voluntarily dismiss the complaint of forfeiture against this property.

On July 19, 1994, the district court denied for want of prosecution an "amended claim" of ownership to all the properties filed that same day on behalf of Rodney Anderson by attorney Pappas, almost three years after the forfeiture action was filed. Rodney Anderson has subsequently disavowed any connection with Pappas, claiming that neither he nor his family hired him.

In August 1995, Rodney Anderson obtained new counsel, David Knoll, who filed a Fed.R.Civ.P. 60(b)(6) motion on his behalf, seeking to rescind the four judgments (two default judgments and two summary judgments) discussed above. After the motion was fully briefed by the parties, Anderson sought an adversarial hearing on the motion. The district court denied a hearing but permitted Anderson to file an additional brief and supporting materials.

Rodney Anderson's motion alleged he had good cause for failing to file claims on the forfeited property: Slaughter's gross negligence and willful misconduct in forging the names of the Anderson claimants to the claims he filed on their behalf. Further, Anderson alleges Slaughter had a conflict of interest with Anderson because Slaughter himself was the subject of a grand jury investigation into narcotics trafficking. The government observed that Anderson had no standing to file a Rule 60(b)(6) motion because he had never been a party to the proceeding in the first place; Anderson responded that while true, that deficiency is the direct result of Slaughter's failures enumerated in Anderson's motion. In September 1996, the district court denied Anderson's Rule 60(b)(6) motion. The district court rejected Rodney Anderson's claim that he was entitled to relief because his attorney forged the signatures of the Anderson claimants and because he had a conflict of interest. Citing *United States v. 7108 W. Grand Avenue*, 15 F.3d 632, 634 (7th Cir.), *cert. denied*, 512 U.S. 1212, 114 S.Ct. 2691, 129 L.Ed.2d 822 (1994), the court explained that clients were bound by their attorney's acts, even if willful or grossly negli-

gent. In addition, the court noted that by pursuing the claims (albeit not very diligently) the Anderson claimants' actions refuted Rodney Anderson's claim that the signatures were unauthorized. Further, Rodney Anderson had been apprised of Slaughter's potential conflict during his criminal trial and had stated that he fully understood the nature of the conflict at the time when he waived his right to conflict-free counsel. The court also rejected Rodney Anderson's claim that he was entitled to a predeprivation hearing under the Supreme Court's holding in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), on the ground that he had waived the issue by not raising it earlier.

The district court concluded that Rodney Anderson also could not demonstrate that he had a meritorious defense to the government's forfeiture action. Anderson claimed that from the late 1970's until he was arrested in 1991 he had worked as a mechanic and had purchased the property at issue with money he had earned legitimately. The district court rejected this conclusory assertion, noting that Anderson had filed no income tax returns between 1983 and 1990 and had failed to produce any evidence or documentation that he had ever earned enough as a mechanic to purchase the multiple properties at issue in this case.

Rodney Anderson appeals the denial of his Rule 60(b) motion for relief from the judgment. He argues the district court abused its discretion by denying his motion on its merits as well by doing so without a hearing.

## II.

■ Before addressing the legal merits of Anderson's case, we must first consider jurisdiction. The complaint filed by the government in October 1991 named as defendants three parcels of real property and 12 vehicles. As far as we can determine from the pleadings, only four of those vehicles have ever been located, seized, or dismissed from the case (the Camaro, the tow truck, and the Volvo, along with a fourth car released to GMAC). The district court never adjudicated the government's claims against

the remaining eight vehicles, nor did it certify under Rule 54(b) of the Federal Rules of Civil Procedure that there was no just reason for delay of a final judgment.[2] Absent such a determination,

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims and parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). In other words, when defendants remain unserved, there is no final and appealable order under the terms of 28 U.S.C. § 1291—the statute which vests this court with appellate jurisdiction over district court judgments.[3] *Ordower v. Feldman,* 826 F.2d 1569, 1573 (7th Cir.1987).

Nevertheless, we believe this case falls into a narrow exception to this rule. In *Ordower,* and again more recently in *Jones v. United States,* 112 F.3d 299, 300–01 (7th Cir.1997), we held that in certain circumstances appellate jurisdiction exists even when a district court order has adjudicated "the rights and liabilities of fewer than all the parties." In *Ordower,* the plaintiffs had sued a number of personal and corporate defendants but had served only some of them. After the district court dismissed the case against the defendants who had been served, the plaintiffs appealed. After observing that unserved defendants potentially negated the finality of the district court's dismissal, we noted the division of authority on the issue, contrasting the Third Circuit's holding that an unserved defendant is not a "party" to the lawsuit, and thus not a bar to finality, with the Eighth Circuit's holding that where a plaintiff can still attempt process on an unserved defendant, finality is absent. *Ordower,* 826 F.2d at 1573 (*comparing De Tore v. Local No. 245,* 615 F.2d 980, 982 n. 2 (3d Cir.1980), *with Haley v. Simmons,* 529 F.2d 78, 79 (8th Cir.1976)). We declined in *Ordower* to decide which approach should govern because under either approach the district court's decision would be final. Any attempt by the *Ordower* plaintiffs to serve the unserved defendants "would be clearly untimely under Rule 4(j)[4] and any new complaint filed by plaintiffs would be dismissed as time-barred." 826 F.2d at 1573. Accordingly, we held that the district court's order was final for purposes of 28 U.S.C. § 1291 because it effectively terminated plaintiffs' federal litigation. We used the same analysis in *Jones,* where two defendants in a multi-defendant case had not been timely served, and the applicable three-year statute of limitations barred the filing of a new complaint. As in *Ordower,* we declined to choose between the differing approaches employed by the Third and Eighth Circuits, because under either approach, "[f]or all practical purposes, plaintiffs' case against the unserved defendants is over." *Jones,* 112 F.3d at 301 (quoting *Ordower,* 826 F.2d at 1573). Thus, "[t]he district court's order was a final decision appealable under 28 U.S.C. § 1291." *Id.*

Of course in this case we are dealing not with human or corporate defendants but with real property and vehicles. Still the analysis is the same. At this point, serving a warrant of seizure against the unserved defendant vehicles would be untimely under Rule 4(m).[5]

**2.** Rule 54(b) of the Federal Rules of Civil Procedure requires that "when multiple parties are involved the court may direct the entry of a final judgment as to one or more but fewer than all of the ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

**3.** 28 U.S.C. § 1291 provides: "The court of appeals ... shall have jurisdiction of appeals from all *final* decisions of the district courts of the United States...." (Emphasis added.)

**4.** In 1987, at the time *Ordower* was decided, Fed.R.Civ.P. 4(j) provided: "If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint ... the action shall be dismissed as to that defendant without prejudice on the court's own initiative with notice to such party or upon motion."

**5.** Fed.R.Civ.P. 4(m) is the current equivalent to Rule 4(j) referenced in *Ordower. See supra* at n. 4. Rule 4(m) provides: "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dis-

And because the alleged offense giving rise to the forfeiture occurred sometime prior to the filing of the forfeiture complaint in October 1991, the governing five-year statute of limitations would bar the United States from refiling any unserved complaint.[6] Any federal forfeiture case against the unserved vehicles is over. Under the rubric established in *Ordower/Jones,* the dismissal or adjudication of the forfeiture claims against the three real properties and the four vehicles operates as a final order despite the existence of the eight unserved vehicles. Accordingly, 28 U.S.C. § 1291 affords this court jurisdiction over the appeal from the denial of Rodney Anderson's Rule 60(b)(6) motion.

### III.

Our review of the district court's denial of Rodney Anderson's motion for relief under Rule 60(b)(6) is highly deferential. Relief under Rule 60(b) "is an extraordinary remedy and is granted only in exceptional circumstances." *Dickerson v. Board of Educ.,* 32 F.3d 1114, 1116 (7th Cir.1994) (citations and internal quotations omitted). We review the district court's denial only for an abuse of discretion, *id.,* which means we will reverse only if we conclude that no reasonable person could agree with the district court's holding. *United States v. Indoor Cultivation Equipment from High Tech Indoor Garden Supply,* 55 F.3d 1311, 1313 (7th Cir.1995).

Rule 60(b) provides that "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment or order" for several enumerated reasons, among them the

catchall under which Rodney Anderson filed his motion: "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). Critical to Rodney Anderson's predicament is the rule's reference to "a party or a party's legal representative." The person seeking relief must have been a party. *National Acceptance Co. of America, Inc. v. Frigidmeats, Inc.,* 627 F.2d 764, 766 (7th Cir.1980).

Was Rodney Anderson a party? "Before a claimant in a forfeiture case can file an answer and defend on the merits, a claim must be filed. If no claim is filed, a putative claimant lacks standing to contest a forfeiture." *United States v. One Urban Lot,* 978 F.2d 776, 778 (1st Cir.1992); *see also United States v. United States Currency in the Amount of $2,857.00,* 754 F.2d 208, 212–13 (7th Cir.1985) (explaining procedures for contesting forfeiture action). Absent the claim, the putative claimant is not a party to the action. So Rodney Anderson was not a party. Because Rule 60 confines the relief it offers to parties, or a party's legal representative, to have standing under the rule, Rodney Anderson must demonstrate that he was the legal representative of one or more of the Anderson claimants who did file claims on the forfeited property. In this context, a legal representative is "one who stands in the place and stead of another, such as an heir at law." *In the matter of El Paso Refinery,* 37 F.3d 230, 234 (5th Cir.1994). In the case of the forfeited Camaro, the answer is easy. No one filed a claim on the car. Because Rodney Anderson cannot be the legal representative of a nonexistent party, he can make no claim under Rule 60(b) for relief from the default judgment entered against the Cama-

miss the action without prejudice as to that defendant...."

**6.** The Controlled Substance Act sets out no procedures for civil forfeitures filed under the act. Instead, it incorporates procedures from the customs laws:

The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been

incurred, under any of the provisions of this subchapter....

21 U.S.C. § 881(d). Section 1621 of the customs laws thus provides the relevant statute of limitations:

No suit or action to recover ... any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered....

19 U.S.C. § 1621. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 63, 114 S.Ct. 492, 505–06, 126 L.Ed.2d 490 (1993).

ro. In the case of the defendant real property at 1633 E. 91st Street, after Valarie Anderson, Rodney's wife and the sole claimant to the property, failed to file a response in May 1994, the court entered summary judgment for the government. While Rodney might be able to make an argument that he should be permitted to stand in the place of his wife, an issue we do not address here, any such standing through her interest in the property is vitiated by an affidavit filed in the district court in which Rodney expressly swore that his wife "in no way shape nor form, as it is well documented, has absolutely NO LEGAL RIGHT nor BENEFICIAL RIGHT to claim ownership to 1633 East 91st Street ... and furnishings therein." (Emphasis in original.) He may not now come in to court and claim that his wife in fact did have an interest in the property and that he represents that interest in seeking relief from the judgment.

Whether Rodney Anderson can stand in the place of and act as the representative for the parties who filed claims on the tow truck and the real property at 13904 Tracy is murkier because of the death of his mother Lorraine Anderson. Lorraine Anderson filed but did not properly pursue claims on these properties. Because the record is incomplete concerning Rodney's status as heir at law, the government hesitates to argue that he cannot stand in her place as her legal representative for purposes of Rule 60(b). Absent a complete record on the issue, we too are unwilling to delve into the issue and instead address the merits of Rodney Anderson's Rule 60(b) claims.

■ Rodney's claims, of course, do not focus on relief from the judgment against the properties insofar as they deprived his mother or wife of the property; he is not actually seeking relief from judgments against the parties. Instead he argues that relief is justified because the judgments deprived *him* of *his* property. He contends he was the true owner of, and was deprived of, these properties through a series of events for which he should be excused under Rule 60(b)(6). He also argues he was deprived of a pre-forfeiture hearing and improperly denied a hearing on the Rule 60(b) motion.

Although Rule 60(b) provides relief to both parties or the legal representatives of parties, when the Rule 60 petitioner seeks relief as the legal representative of a party, the claims presented are not his own claims but those of the party in whose place he stands. "[T]he term legal representative was intended to reach only those individuals who were in a position tantamount to that of a party or whose legal rights were otherwise so intimately bound up with the parties that their rights were directly affected by the final judgment." *Kem Mfg. Corp. v. Wilder,* 817 F.2d 1517, 1520 (11th Cir.1987). Thus, were he the representative of his mother's interests, Rodney Anderson could challenge the judgment against his mother's property. But he cannot claim that he should have been a party and raise the arguments he would have raised had he in fact been so. Rodney has not argued claims on behalf of his mother and any such claims are waived. Instead he argues his own claims. Nevertheless, to the extent those claims are intertwined, as Rodney argues, and for ease of analysis, we address each in turn.

■ As did the district court, we analyze Rodney Anderson's Rule 60(b)(6) motion under the three-part test rearticulated recently in *Indoor Cultivation,* requiring that the movant show: "(1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original action." 55 F.3d at 1313. The district court found that Anderson could satisfy neither the first nor the third part of the test.

Rodney Anderson's first claim of good cause is centered on evidence that the signatures of the Anderson claimants on the six claims to properties which Slaughter submitted were forged and then falsely notarized by Slaughter. He has submitted the affidavit of a purported expert in forensic document examination to the effect that the signatures on the Anderson claimants' claims are not actually the signatures of the Anderson claimants. According to Rodney Anderson, this demonstrates that Slaughter engaged in criminal conduct when he filed the claims. And while he acknowledges that Rule 60(b) is not the remedy for attorney negligence or

incompetence, he argues that here his attorney's acts were fraudulent, even criminal, and that he should not have these acts of his attorney imputed to him.

But this is all beside the point. Even if Slaughter broke the law in notarizing the Anderson claimants' purported signatures, the fact that he may have signed in their stead does not mean that the signatures were necessarily forgeries. Slaughter may or may not have been authorized by the claimants to sign their names. Certainly the conduct of pursuing claims filed with their signatures might indicate an intent to adopt or ratify those signatures. *See generally* Restatement (Second) of Agency §§ 82–99 (discussing ratification of unauthorized acts of an agent). But what if they did not? The problem for Rodney Anderson is not that Slaughter filed claims, even fraudulent ones, on behalf of his family. Rodney's problem is that Slaughter filed no claims on Rodney Anderson's behalf.[7] Absent a claim, Rodney had no standing to contest the forfeitures. *See* discussion, *supra* at 1082. Whether or not his family had standing is not relevant to whether he had standing; more than one claimant may file a claim to property.

In any event, Slaughter's failure to file claims on behalf of Rodney is unrelated to whether the Anderson claimants' signatures were forged or the notarizations false. Rodney's case falls squarely into the precedent set by *7108 West Grand Ave.*, in which we affirmed that an attorney's negligence, gross negligence, or even intentional misconduct still bound his client and was not grounds for Rule 60(b) relief from forfeiture judgments. 15 F.3d at 634–35. In *7108 West Grand*, the putative claimant sought relief through Rule 60(b) after his attorney failed to file timely claims on his behalf. We affirmed the district court's denial of such relief, on the grounds that a client is bound by his chosen agent's deeds, whether it be negligence, gross negligence, or even wilful conduct. "Holding the client responsible for the lawyer's deeds ensures that both clients and

lawyers take care to comply. If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client could not suffer the lawyer would not suffer either." *Id.* at 634 (quoting *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986)). Rodney recognizes that *7108 West Grand* controls but attempts to distinguish it on the ground Slaughter's conduct was criminal. But the criminality, if any, related to the filing of claims for Rodney's family. Any criminality was unrelated to the failure to file claims on behalf of Rodney. That failure was either negligent (gross or not) or intentional. Rodney's case is indistinguishable from *7108 West Grand*. Either way, Rodney's recourse lies elsewhere. "Malpractice, gross or otherwise, may be a good reason to recover from the lawyer but does not justify prolonging litigation against the original adversary." 15 F.3d at 633.

■ Rodney Anderson also claims as good cause for his default the fact that Slaughter was under investigation himself for being involved in narcotics trafficking and therefore had a conflict of interest in representing Anderson. This potential conflict was discussed in this court's review of Anderson's criminal conviction in which he argued that the government's investigation of Slaughter had deprived him of his Sixth Amendment right to representation free of conflict. *Hubbard*, 22 F.3d at 1418–19. We determined then that any potential conflict of interest had been waived by Anderson. The district court had notified Anderson that his attorney was the potential target of a narcotics investigation and that "in order to protect himself from prosecution and to curry favor with the prosecutors, [your attorney] might fail to raise on your behalf defenses that should be raised ... [and] might sell [you] out in order to help himself with the government." *Id.* at 1418–19 (quoting district court) (all alterations in original). At that

---

7. Given Rodney Anderson's lack of a meritorious defense, which we discuss later, filing no claims under his name may have been a strategic decision. Rodney Anderson admits Slaughter was hired by him to represent his and his family's interests in the properties. By filing claims purportedly on behalf of Lorraine, Willie, and Brenda Anderson, Slaughter succeeded in having the government dismiss the forfeiture actions against 8136 South Dobson and the Volvo.

time, Anderson indicated to the district court that he understood the potential conflict, stating in his own words, "that there was a 'possibility that [my attorney] might not perform for me in a hundred percent manner of defending me by him being investigated by the government in which like to sell me out, in a sense.'" *Id.* (quoting Rodney Anderson). Anderson assured the district court that he wished to continue with Slaughter's representation; in fact he insisted on it. *Id.* at 1419.

Now, in an attempt to retract his waiver, Anderson presents this court with evidence that Slaughter was being investigated for offering to sell fifty kilograms of cocaine. He argues that the government's failure to disclose this fact about the investigation negates Anderson's waiver, which, citing *United States v. Colonia,* he argues must be both knowing and intelligent. 870 F.2d 1319, 1327 (7th Cir.1989). But Anderson was informed of the nature of crime for which his attorney might become the target of an investigation: "being involved in illegal drug activity," *Hubbard,* 22 F.3d at 1418. More importantly, Anderson fully understood the nature of the *conflict.* The conflict resulted from the potentially split loyalty of his counsel; Rodney Anderson himself fully articulated the nature of the conflict when he described it back to the district court. The fact that he now may know more details about the criminal investigation does not change the fact that he understood the conflict. Indeed, knowing what he knows now, he could not state it better than he did to the district court.

Having waived his right to conflict-free counsel and having insisted that Slaughter continue to represent him in his criminal trial, Anderson cannot claim that the same district court abused its discretion in concluding that he had also waived any right to conflict-free counsel in the civil proceedings arising out of his criminal trial. It is not at all clear that Anderson even has a right to conflict-free counsel in a civil forfeiture case.

As we discussed in *7108 West Grand,* and more recently in *Indoor Cultivation,* it is unlikely that the Sixth Amendment's guarantee of effective assistance of counsel even applies to civil forfeiture proceedings. *7108 West Grand,* 15 F.3d at 635 (noting that Sixth Amendment right to effective assistance by its terms applies to criminal cases); *Indoor Cultivation,* 55 F.3d at 1318 (same).

In any event, Rodney Anderson's focus on Slaughter as the "good cause" for his default is misplaced. Slaughter's failure to file claims on Rodney's behalf only deprived him of initial standing. Slaughter, however, was only Anderson's attorney through the default judgment against the Camaro. After that he was fired and replaced by attorney Royce. But Royce never even attempted to file late claims on behalf of Rodney under the terms of Rule 60(b). *United States v. One Dairy Farm,* 918 F.2d 310, 312 (1st Cir.1990) ("If appellants needed additional time to file a claim, Rule C(6) [of the Supplemental Rules of Civil Procedure] has a built-in time extension which permits claimants to petition the district court for further time to file a claim.").[8] And aside from the Camaro, the judgments entered against the forfeited properties all occurred in 1994 and were the result of a failure by the claimants to respond to motions filed by the government.

Unlike with Slaughter, Anderson has not argued in the district court or here that his subsequent attorneys, Royce and Pappas, were anything other than negligent in failing to pursue the Anderson claims. Anderson presents no argument why the inattention to his case on their part is in any way connected to criminal conduct on the part of Slaughter. *See Harold Washington Party v. Cook County, Illinois Democratic Party,* 984 F.2d 875, 880 (7th Cir.1993) (relief from judgment under Rule 60(b) unwarranted, in part, because "what may arguably have been excusable neglect on the part of the lead counsel could not excuse or explain the neglect on the part of the other three counsel of record"). At-

---

**8.** Rule C(6) of the Supplemental Rules provides: "[t]he claimant of property that is subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim." *See United States v. One Dairy Farm,* 918 F.2d 310, 311–12 (1st Cir.1990) (discussing very limited circumstances in which mitigating factors may justify extension of time for filing claim in forfeiture case).

torney Pappas, who appeared on behalf of the claimants, by all appearances was the only attorney to vigorously pursue the interest of the Anderson claimants. Despite this, his representation is specifically disavowed by Rodney who claims Pappas was never retained by him or his family. None of which has anything to do with Slaughter, who is the focus of Rodney Anderson's attempt to obtain Rule 60(b) relief. The judgments resulted from at most the negligent or grossly negligent failure to respond appropriately to the motions. Any negligence on the part of Anderson's subsequent counsel differs little from that discussed in *7108 West Grand.* Anderson's relief, if any, rests elsewhere.

 Anderson also contests the district court's conclusion that in any event, he was unable to establish a meritorious defense to the government's forfeiture claims. But the district court's conclusion is supported by the evidence, or in this case, the lack of evidence. Anderson claims in an affidavit that from the late 1970's until his arrest in 1991, he "performed work as an automotive mechanic, machinist and tow truck operator." He thereby suggests he had legitimate financial resources by which to have purchased the properties in question. In rejecting this unsupported claim, the district court noted that Anderson had filed no income tax returns from 1983 through 1990, and could show no source of legitimate income that would have enabled him to afford such purchases.

 In response, Rodney Anderson alleges that had the district court afforded him a hearing he could have proved his claim. He argues that when the government seized 1633 E. 91st St., it also seized its entire contents including all of his paperwork, receipts, and check stubs. Without so stating, we assume he is suggesting that despite having filed no tax returns, these items would have been able to establish financial resources independent of his phencyclidine distribution business by which he could have afforded the seized properties. Besides never stating what these items might have demonstrated that was not contradicted by his lack of reported income, Anderson never filed any motions in the district court for the

return of the allegedly seized pertinent documentation of this income. His claims are conclusory, totally lacking in evidentiary support, and unsupported circumstantially by any effort on his part to verify them. Anderson has articulated no meritorious defense which he might have proved at a hearing that he could not prove or at least hint at through the method provided him by the district court.

 We afford a district court substantial discretion in determining whether to conduct an evidentiary hearing on a Rule 60(b) motion. "Neither the Federal Rules of Civil Procedure nor the local rules require the district court to hold a hearing or make specific findings in dealing with a Rule 60(b) motion. Rather, whether to grant a hearing or make specific findings in ruling upon a Rule 60(b) motion is left to the district court's discretion." *Atkinson v. Prudential Property Co.,* 43 F.3d 367, 374 (8th Cir.1994) (citing *Wilson v. Johns–Manville Sales Corp.,* 873 F.2d 869, 873 (5th Cir.), *cert. denied,* 493 U.S. 977, 110 S.Ct. 504, 107 L.Ed.2d 506, (1989)). Here, at the same time the district court denied Rodney Anderson a hearing, it permitted him to file any documentation, supplemental evidence, or additional pleadings which he thought might bear on his motion. Anderson has not identified any probative evidence which he was precluded from introducing through the opportunity afforded him by the district court. Accordingly, he is unable to demonstrate how the district court abused its discretion by denying him a hearing and instead offering him the opportunity to introduce the additional materials as it did.

 Finally, Rodney Anderson alleges he was denied a pre-deprivation hearing before the government seized and forfeited the Tracy and 91st Street properties. *See James Daniel Good Real Property,* 510 U.S. at 48–49, 114 S.Ct. at 498–99. But Rodney Anderson never raised this issue despite the fact that *James Daniel Good* was decided before the district court in this case heard the forfeiture actions in which default and summary judgments were entered against the real properties Rodney now claims. *See*

*United States v. All Assets and Equip. of West Side Bldg. Corp.*, 58 F.3d 1181, 1191 (7th Cir.1995) (holding that though parties raised it late, issue of predeprivation hearing arising from *James Daniel Good* was not waived "because they raised the matter at the first opportunity.") Anderson does not allege that he was not properly notified of the foreclosure actions under the law existing at the time those actions were filed. Nor can he claim he was unaware of the proceedings against those properties, not only because he retained Slaughter to represent him in the forfeiture actions and his attorney's knowledge is imputed to him, but also because the evidence indicates that upon the default judgment against the Camaro automobile, Rodney discharged Slaughter and replaced him with Royce. Thus, Rodney should at the least have been aware of the forfeiture hearings in the spring of 1994 when summary judgment was entered against the two properties and where he could and should have timely raised the predeprivation hearing issue he now seeks to raise through a Rule 60(b) motion.

 Moreover, Rodney Anderson does not claim that the failure to provide such a hearing provides an independent basis for reversing the final judgments of forfeiture against the two properties. Indeed we have held otherwise. See *West Side Bldg. Corp,* 58 F.3d at 1193 (adopting approach of majority of circuits that seizure without predeprivation hearing does not, standing alone, require that property be immune from forfeiture). It might entitle him to profits of which he was deprived during the period of illegal seizure. *Id.* But Rodney Anderson has never filed a claim for lost profits or rents for the period between when the properties were seized and when they were forfeited. And whether or not he had good cause for the default judgments, an outstanding claim for lost rents or profits does not provide "a meritorious defense" to the forfeiture action itself, which is what Rule 60(b) would require. *United States v. One 1979 Rolls–Royce Corniche Convertible,* 770 F.2d 713, 716 (7th Cir.1985). *See* discussion, *supra* at 1086. The district court did not abuse its discretion in refusing to grant Rule 60(b) relief to Rodney Anderson on these grounds.

## IV.

Whether it was intentional on his part in an effort to save his property by attributing ownership to his family, or whether it was the result of a strategy devised by his attorney, as a non-claimant to the properties the government sought to forfeit, Rodney Anderson lacked standing in the proceedings. He continues to lack standing in his Rule 60(b) motion for relief from the forfeiture judgments. Even if he did not, Rodney Anderson has been unable to establish the good cause or meritorious defense which might otherwise entitle him to such relief. We therefore affirm the district court.