21-876-cv
*Saada v. Golan*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18ᵗʰ day of October, two thousand twenty-one.

PRESENT:    JOSÉ A. CABRANES,
            REENA RAGGI,
            STEVEN J. MENASHI,
                        *Circuit Judges.*

_____

ISACCO JACKY SAADA,

                    *Petitioner-Appellee,*

        v.                                                                    21-876-cv

NARKIS ALIZA GOLAN,

                    *Respondent-Appellant,*

_____

**FOR PETITIONER-APPELLEE:**          RICHARD MIN, Burger Green & Min LLP,
                                       New York, NY.

**FOR RESPONDENT-APPELLANT:**         CARL L. RIZZI, Paul, Weiss, Rifkind,
                                       Wharton & Garrison LLP, New York,
                                       NY (Karen King, Morvillo Abramowitz
                                       Grand Iason & Anello PC, New York,
                                       NY; Daniel H. Levi, Randall W. Bryer,

Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *on the brief*).

Appeal from an order dated March 29, 2021, and judgment dated April 6, 2021, entered by the United States District Court for the Eastern District of New York (Ann M. Donnelly, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 29, 2021 order and April 6, 2021 judgment of the District Court be and hereby are **AFFIRMED**.

This case, which returns to this Court for the third time now, concerns the future of the parties' young son, B.A.S. Respondent Narkis Aliza Golan — B.A.S.'s mother — appeals the District Court's March 29, 2021 order and accompanying judgment denying her Rule 60(b) motion for relief from the District Court's earlier May 5, 2020 order directing that B.A.S. be returned to Italy. Seeing no error in the District Court's denial of Golan's Rule 60(b) motion, we affirm the March 29, 2021 order and the accompanying April 6, 2021 judgment.

## BACKGROUND

While we assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, given this case's winding procedural history, we think it useful to lay out a roadmap explaining how this case finds itself before us yet again. In July 2018, Golan, a U.S. citizen, and B.A.S. (then two years old) travelled to the United States from Milan, Italy, where the two of them, along with Petitioner Isacco Jacky Saada — B.A.S.'s father and an Italian national — had been living. Though Golan and B.A.S., who had been born in Italy, were originally scheduled to return to Italy the next month, Golan decided to stay in the United States and move to a confidential domestic violence shelter in New York.

In September 2018, Saada commenced this case by filing a petition before the District Court seeking B.A.S.'s return to Italy pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, as implemented by the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* After a nine-day bench trial, the District Court concluded that B.A.S.'s "habitual residence" — a term of art in Hague Convention cases, *see Monasky v. Taglieri*, 140 S. Ct. 719, 726-28 (2020) — was Italy. *See Saada v. Golan*, No. 18-CV-5292 (AMD) (LB), 2019 WL 1317868, at *15 (E.D.N.Y. Mar. 22, 2019) ("*Saada I*"), *aff'd in part, vacated in part, and remanded*, 930 F.3d 533 (2d Cir. 2019) ("*Saada II*"). While the District Court further concluded that returning B.A.S. to Italy would expose him to a "grave risk of harm," specifically the psychological harm accompanying exposure to domestic violence perpetrated by Saada against Golan, it was satisfied that a series of "undertakings" by Saada — including his promises to stay away from Golan after she and B.A.S. returned to Italy and to visit B.A.S. only with Golan's consent — were sufficient to "ameliorate the grave risk of

harm to B.A.S. upon his repatriation to Italy." *Id.* at *18-19. Accordingly, the District Court ordered that B.A.S. be returned to Italy.

On appeal, we agreed with the District Court's habitual-residence determination, but concluded that the District Court erred in granting Saada's petition because "the most important protective measures it imposed [we]re unenforceable and not otherwise accompanied by sufficient guarantees of performance." *Saada II*, 930 F.3d at 537. We remanded the case and instructed the District Court to conduct further proceedings to determine the availability of alternative ameliorative measures. *Id.*

The parties subsequently sought — and were granted — an Italian court order that, *inter alia*, required Saada to stay away from Golan, restricted Saada's access to B.A.S., and ordered Saada to undergo certain psychological evaluations and counseling. In light of this development, on remand, the District Court again granted Saada's petition, and also ordered Saada to pay Golan $150,000 to cover her and B.A.S.'s expenses upon their return to Italy. *Saada v. Golan*, No. 18-CV-5292 (AMD) (SMG), 2020 WL 2128867, at *5 (E.D.N.Y. May 5, 2020) ("*Saada III*"). On appeal, we affirmed the District Court's judgment. *Saada v. Golan¸* 833 F. App'x 829. 834 (2d Cir. 2020) (summary order) ("*Saada IV*").

Soon after we issued our mandate returning this case to the District Court, on January 25, 2021, Golan filed a Rule 60(b) motion for relief from judgment, arguing that "newly discovered evidence" justified reconsideration of the Court's order in *Saada III*. *See* Fed. R. Civ. P. 60(b)(2). In particular, Golan offered what she claims is the transcript of a November 2020 phone call between Saada, his father, and a rabbi — and to which Golan was surreptitiously listening — in which Saada purportedly told the rabbi that he did not trust Golan as a mother because "she bring[s] men[] to her place to have sex with her" and that he was in possession of a "picture of [B.A.S.] with different men[]." J. App'x 124. When asked by the rabbi how he knew what Golan was doing in her apartment, Saada responded, "I cannot tell you how I know, but I have proof[]" and that "[t]he lawyers who [inaudible] investigators . . . so I know." *Id.* at 125 (ellipsis in original). Golan argues that Saada's November 2020 statements demonstrate that he violated a "court order," *see, e.g.*, Appellant's Br. 24, which she maintains is evident in the following October 16, 2018 conference exchange:

> **Golan's counsel:** We're happy to, of course, try to work things out, you know, as long as the safety concerns are addressed and the supervised visit [with B.A.S.] is not — you know, the supervisor is not followed to try to uncover the location where my client is staying, that was one of her —
> **The District Court:** I don't think — let's just be clear here, so I wouldn't think I would have to say this but obviously there's not going to be any effort to try to determine where your client is; you're not going to do that, are you?
> **Saada's counsel**: No . . . .

J. App'x 141-42.[1]  Golan argued that Saada's violation of the October 16, 2018 order cast doubt on Saada's willingness to abide by Italian court orders.  Saada, for his part, explained that the "investigators" he referenced during the November 2020 phone call were hired by his counsel after a man, one Kfir Hazan, contacted Saada alleging that he had been romantically involved with Golan, that she was engaging in "high-risk" behavior around B.A.S., and that he now wished to offer damaging information about her.  J. App'x 163.  Saada's attorneys likewise represented to the court that they had hired an investigator for the limited purpose of ensuring that B.A.S. was safe, and that the investigator had not disclosed the respondent's address to Saada or his attorneys.

The District Court denied Golan's Rule 60(b) motion.  It declined to disturb its prior order on the basis of "vague statements," and in light of "no other evidence to support [Golan's] claim that [Saada] tried to find out where she lived during the pendency of the petition."  *Saada V*, 2021 WL 1176372, at *5.  The District Court also pointed out that evidence demonstrated that Golan had sent Saada her address as early as April 2020 so that he could send things to B.A.S.  *Id.*  It further concluded that Saada did not violate the District Court's October 16, 2018 directive because it was Saada's counsel that engaged the investigator.  *Id.*  Ultimately, the District Court concluded that "[k]nowledge of the limited investigation that did take place would not have changed the outcome" of its order granting the petition because "it does not establish that [Saada] has violated an order of this Court or that the protections put in place in Italy will be insufficient . . . ."  *Id.* at *6.  Golan now appeals the District Court's denial of her Rule 60(b) motion.

## DISCUSSION

We review a denial of Rule 60(b) relief for abuse of discretion.  *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001).  Rule 60(b) relief "is generally not favored" and granted only upon a showing of "exceptional circumstances."  *Id.*  The burden of proof rests on the party seeking the relief, and when the existence of "newly discovered evidence" forms the basis of a motion, the movant must demonstrate that

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

---

[1]  The District Court assumed "for the sake of argument" that its directive constituted a "protective order" as Golan's moving papers assumed.  *Saada v. Golan*, No. 18-CV-5292 (AMD) (RML), 2021 WL 1176372, at *5 n.8 (E.D.N.Y. Mar. 29, 2021) ("*Saada V*").

*Id.* at 392.

On appeal, Golan argues that the District Court's principal error lies in its refusal to hold an evidentiary hearing in response to her Rule 60(b) motion. In the Rule 60(b) context, a party is not automatically entitled to an evidentiary hearing. *See Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015); *Cablevision Sys. New York City Corp. v. Okolo*, 197 F. App'x 61, 62 (2d Cir. 2006) (summary order); *United States v. Premises & Real Prop. With Buildings, Appurtenances & Improvements at 219 Ingersol St.*, 198 F.3d 235 (table), 1999 WL 822492, at *2 (2d Cir. 1999) (unpublished opinion). As a general matter, in the Rule 60(b) context, evidentiary hearings should be held to decide disputes concerning "material issues of fact." *Flaks v. Koegel*, 504 F.2d 702, 712 (2d Cir. 1974); *cf. Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (noting that "[i]f material facts are in dispute" concerning an ineffective assistance of counsel claim, a court should usually hold an evidentiary hearing). We review a district court's refusal to grant a hearing for abuse of discretion, *219 Ingersol St.*, 1999 WL 822492, at *2 (citing *United States v. 8136 S. Dobson St., Chicago, Ill.*, 125 F.3d 1076, 1086 (7th Cir. 1997)); *see In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (describing the abuse-of-discretion standard), and find no such abuse here.

The District Court concluded that had it known of the "limited investigation" prior to its granting of Saada's petition, this "would not have changed the outcome" and it still would have granted the petition. *Saada V*, 2021 WL 1176372, at *5. This was sufficient grounds to deny Golan's Rule 60(b) motion. *See Int'l Bhd. of Teamsters*, 247 F.3d at 392. In arguing otherwise, Golan maintains that the details of the investigation raise factual questions and the District Court abused its discretion in refusing to grant an evidentiary hearing to sort out those questions before reaching its conclusion. She has, however, pointed to no dispute of material fact; she does not contest the explanation that Saada's counsel provided — that counsel hired an investigator after Hazan contacted Saada — and instead merely suggests that the November 2020 recording raises a "host of . . . unanswered questions." Appellant's Br. 23; *see also id.* at 30 (declining to challenge the credibility of Saada's counsel and instead conceding that Saada's "counsel may himself be credible").[2] Golan's "questions" about the phone call are not sufficient to constitute disputes of material facts.

---

[2] Golan does argue that the November 2020 phone call "raise[s] a reasonable inference" that Saada "hired investigators to follow Ms. Golan," Appellant's Reply 5, which would seemingly contradict representations by Saada's counsel that it was his "law firm [that] took limited actions . . . to investigate . . . whether B.A.S. was in imminent danger," J. App'x 163. But Golan's reading of the November 2020 is strained. Saada is reported to have said that he knew private details about Golan's life because "[t]he *lawyers* . . . [inaudible] investigators." *Id.* at 125 (emphasis added). On its face, the transcript does not raise an inference that — contrary to counsel's representations — it was Saada who hired the investigator.

5

While Golan points to cases in which we have remanded Rule 60(b) cases for evidentiary hearings, these cases are inapposite here. In *Flaks v. Koegel*, for example, we reversed a district court's denial of Rule 60(b) relief when the court failed to make a finding of willfulness — a necessary element — as it imposed Rule 37 sanctions on a party for failing to meet discovery obligations. 504 F.2d at 712. Unlike here, that party submitted affidavits which created "material issues of fact which could not have been properly resolved without an evidentiary hearing." *Id.* Similarly, in *Vindigni v. Meyer*, 441 F.2d 376 (2d Cir. 1971), we reversed the district court's dismissal for failure to prosecute and remanded for an evidentiary hearing when plaintiff submitted an affidavit stating that he tried diligently to locate his counsel, even though the district court concluded that he had let more than a year go by without inquiring as to the status of his suit. *Id.* at 377. Here, however, Golan has submitted no affidavits or other materials that raise a dispute of material fact. Rather, all the materials submitted in the record are consistent with the District Court's conclusion that it was Saada's counsel — and not Saada — that hired an investigator, and that Saada did not violate the District Court's October 16, 2018 directive.

## CONCLUSION

We have considered all of Golan's remaining arguments and find them to be without merit. For the foregoing reasons, therefore, we **AFFIRM** the March 29, 2021 order and April 6, 2021 judgment of the District Court.[3]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] On April 21, 2021, this Court granted Golan's request to stay the District Court's March 29, 2021 order while she sought relief from the Supreme Court of the United States; the stay continues to remain in effect "pending a decision from the Supreme Court on [Golan's] petition for a writ of *certiorari* and, if the petition is granted, until that Court issues a ruling in her case." ECF No. 48, at 1-2.