**COMMUNITY DENTAL SERVICES, dba SmileCare Dental Group, Plaintiff–Appellee,**

v.

**Stuart TANI, DDS, Defendant– Appellant.**

No. 00–56450.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 2001.

Filed March 7, 2002.

As Amended on Denial of Rehearing and Rehearing En Banc April 24, 2002.*

* Judge TALLMAN has voted to grant the peti-tion for panel hearing and rehearing en banc.

Dennis D. Burns, La Jolla, CA, for the defendant-appellant.

John F. Cannon, Steven M. Hanle, Edward S. Kim, Stradling Yocca Carlson & Rauth, Newport Beach, CA, for the plaintiff-appellee.

Before BROWNING, REINHARDT and TALLMAN, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge.

This appeal arises from the denial of a motion for relief from default judgment under Fed.R.Civ.P. 60(b).[1] We hold that the appellant has demonstrated "extraordinary circumstances" that warrant setting aside the default judgment and therefore reverse the district court. *See* Fed. R.Civ.P. 60(b)(6).

## BACKGROUND

The underlying dispute in this case centers on the use of the trademarked term, "SmileCare," to promote dental care services. The plaintiff-appellee, Community Dental Services d.b.a. SmileCare Dental

Group ("CDS"), filed an action against defendant-appellant, Stuart Tani ("Tani"), for infringement of the trademark, dilution, and unfair competition as a result of Tani's use of the term "SmileCare" to promote his dental practice.[2]

In response to the filing of the action on May 13, 1999,[3] Tani consulted with his financial advisor, Jeff Stein (an attorney who subsequently resigned from the California State Bar with charges pending). Stein recommended that Tani retain attorney Eugene Salmonsen as counsel and Tani did as advised. Stein continued to work with Salmonsen in representing Tani in the early stages of the case. Both parties orally agreed to an extension of time for the filing of an answer to the complaint. CDS forwarded a signed stipulation providing for a 10-day extension. However, Tani's counsel failed to file the stipulation, and also failed to file a timely answer. On July 14, 1999, CDS filed a request for entry of default. At the time of its request, CDS discovered that an answer had been filed one day earlier, on July 13. The answer was filed approximately two weeks late. Having not been served with a copy, CDS telephoned Stein who stated that CDS had indeed been served with a copy, but that he would send an additional copy as a courtesy. CDS again did not receive a copy of the answer.

At a preliminary case management conference on July 21, 1999, Stein and Salmonsen appeared on behalf of Tani; Stein again represented to CDS that he had sent the answer to CDS's counsel through overnight mail. CDS declared that it had never received the pleading.

---

1. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

2. Tani was promoting his dental practice as "The SmileCare Professionals."

3. CDS alleged violations of 15 U.S.C. §§ 1114 (trademark infringement and counterfeiting), 1125(a) (use of false designation in interstate commerce), 1125(c) (dilution), and California Business and Professions Code §§ 14330, 14335, 17200 et seq. (dilution and unfair competition).

On August 9, 1999, the magistrate judge ordered Salmonsen to serve the answer on CDS and to call CDS to discuss further the possibility of settlement. Salmonsen did not obey this court order. He failed to contact CDS for the court-ordered settlement conference call, and failed once again to give CDS a copy of Tani's answer. Subsequently, CDS made a motion to strike the answer and moved for a preliminary injunction and default judgment against Tani. At the hearing on these motions on October 18, 1999, Salmonsen appeared on Tani's behalf, but he did not file a written memorandum in opposition, and *still* did not provide CDS with a copy of the answer. After hearing oral arguments from both parties, the district court granted CDS's motions. The order of default judgment against Tani was mailed to Tani's office because Salmonsen had used that address as his address of record.[4]

On several occasions, Salmonsen and Stein represented to Tani that the litigation was proceeding smoothly. Tani continued to rely on both Salmonsen's and Stein's assurances that the case was going well. Tani asserts that it was not until he received the order for default judgment at his office in approximately April, 2000 that he became aware of the events that had been occurring with respect to his case.

Tani retained a new attorney, Daniel Levinson, to contest CDS's motion for a permanent injunction and entry of default judgment, in which CDS sought damages in the amount of over six and a half million dollars. On April 17, 2000, Levinson filed a memorandum in opposition and also asked the court to delay ruling on the damages issue until he had filed a motion to set aside the default judgment. Having still not received a motion for relief from Levinson on June 28, 2000, the court ordered Tani to pay CDS almost two million dollars in damages and prejudgment interest, costs, and attorneys' fees. The court also granted a permanent injunction prohibiting Tani from using the trademarked term.

Levinson subsequently filed a motion for relief from default judgment on behalf of Tani. The district court treated Levinson's motion as a motion under Fcd. R. Civ. Pro. 60(b).[5] The district court heard oral argument and denied the motion. The court reasoned that, although Stein and Salmonsen had represented to Tani that the litigation was proceeding smoothly, the acts and omissions of counsel (e.g. the repeated failure, even upon direct order of the court, to serve opposing counsel with the answer, the absence from various hearings) were chargeable to Tani. It added that Tani failed to establish that his former attorneys' conduct presented "extraordinary circumstances" warranting relief,[6] and that even if he had proven such circumstances, Tani would not merit relief due to his own "culpable conduct." Tani timely appealed the denial of this motion.[7]

---

**4.** Although Salmonsen represented to the court that he had a satellite office in San Diego, the address Salmonsen and Stein gave as their address of record was the address of one of Tani's dental offices.

**5.** Rule 60(b) states: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any

other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b).

**6.** The district court also found that counsel's actions were not "excusable neglect." *See* Fed.R.Civ.P. 60(b)(1). Tani does not contest this finding on appeal.

**7.** The district court's decision to deny a Rule 60(b) motion is reviewed for an abuse of discretion. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir.2000).

## DISCUSSION

■ Under Federal Rule of Civil Procedure 60(b)(6), a default judgment may be set aside when there is any reason not previously considered in the Rule that justifies granting relief.[8] We have held that a party merits relief under Rule 60(b)(6) if he demonstrates "extraordinary circumstances which prevented or rendered him unable to prosecute[his case]." *Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir.1971) (per curiam); *see also Pioneer Investment Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The party must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion. *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.1993).

■ The district court concluded that Tani did not present "extraordinary circumstances" beyond his control because he was chargeable with his counsel's conduct. Under this circuit's precedent, a client is ordinarily chargeable with his counsel's negligent acts. Clients are "considered to have notice of all facts known to their lawyer-agent." *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir.1989). Because the client is presumed to have voluntarily chosen the lawyer as his representative and agent, he ordinarily cannot later avoid accountability for negligent acts or omissions of his counsel. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Pio-*

*neer*, 507 U.S. at 396–97, 113 S.Ct. 1489. While the above principles provide the general rule regarding the client-attorney relationship, several circuits have distinguished a client's accountability for his counsel's neglectful or negligent acts—too often a normal part of representation—and his responsibility for the more unusual circumstance of his attorney's extreme negligence or egregious conduct. This circuit, however, has not yet addressed the question whether a client is responsible for his counsel's gross negligence, or, to put the question differently, whether gross negligence may constitute "extraordinary circumstances" warranting relief under Rule 60(b)(6). We did, however, recently indicate that we might be willing to adopt the latter approach.

■ The circuits that have distinguished negligence from gross negligence in the present context have granted relief to the client where the default judgment was a result of his counsel's displaying "neglect so gross that it is inexcusable." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir.1978); *see also Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805, 806 (3d Cir.1986) (reversing denial of plaintiff's R. 60(b) motion based on plaintiff's counsel's "blatant disregard for explicit [court] orders"); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 195 (6th Cir.1986) ("Although a party who chooses an attorney takes the risk of suffering from the attorney's incompetence, we do not believe that this record exhibits circumstances in which a client should suffer the ultimate sanction

---

8. Clause 60(b)(6) is a "catch-all" clause that is read as being exclusive of the other grounds for relief listed in Rule 60. *Lafarge Conseils et*

*Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir.1986).

of losing his case without any consideration of the merits because of his attorney's neglect and inattention."); *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235 (D.C.Cir.1964) (stating that R. 60(b)(6) "is broad enough to permit relief when as in this case personal problems of counsel cause him grossly to neglect a diligent client's case and mislead the client"); *Primbs v. United States*, 4 Cl.Ct. 366, 370 (1984) (holding that normal attorney-client relationship does not bar Rule 60(b) relief when "the evidence is clear that the attorney and his client were not acting as one").[10] These courts have concluded that an unknowing client should not be held liable on the basis of a default judgment resulting from an attorney's grossly negligent conduct, and that in such cases sanctions should be imposed on the lawyer, rather than on the faultless client. *See Carter*, 804 F.2d at 807; *Steuart*, 329 F.2d at 235.

We join the Third, Sixth, and Federal Circuits in holding that where the client has demonstrated gross negligence on the part of his counsel, a default judgment against the client may be set aside pursuant to Rule 60(b)(6).[11] Our holding is consistent with the well-established policy considerations that we have recognized as underlying default judgments and ▮▮▮ Rule 60(b). First, the rule is remedial in nature and thus must be liberally applied. *See Falk v. Allen*, 739 F.2d 461,

---

10. The First and Fourth Circuits have also approved of this principle, albeit in dicta. *See In re Virginia Info. Sys. Corp.*, 932 F.2d 338, 342 (4th Cir.1991) ("[A]ttorney malfeasance which actively misleads a client or is comparably culpable might successfully ground a Rule 60(b) motion."), *overruled on other grounds by Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir.1974) ("Rule 60(b) of the F.R.Civ.P. is a remedial rule which normally receives a liberal construction from courts concerned that cases not be decided in default against parties who are inadvertently absent. But the liberal construction is usually reserved for instances where error is due to failure of attorneys or other agents to act on behalf of their clients ....") (internal citations omitted). The position of the Second Circuit is unclear. Although the court has stated that it is generally reluctant to allow relief under Rule 60(b)(6) for a counsel's gross negligence, *see Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir.1986), it has occasionally granted relief on this ground. *See, e.g., United States v. Cirami*, 563 F.2d 26, 34–35 (2d Cir.1977); *Vindigni v. Meyer*, 441 F.2d 376, 377 (2d Cir.1971). *But see Dickerson v. Bd. of Educ. of Ford Heights*, 32 F.3d 1114, 1118 (7th Cir.1994) (stating that "counsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief"); *Heim v. Commissioner*, 872 F.2d 245, 248 (8th Cir.1989) (stating in context of tax case that even if regular R. 60(b) standards applied that "any errors committed by [counsel], even accepting the designation of gross negligence, do not constitute an adequate showing of 'exceptional circumstances'" and distinguishing cases which did grant relief for attorney negligence as cases in which client was left virtually unrepresented).

11. Our dissenting colleague simply prefers the harsh and inequitable minority view of the Seventh and Eighth Circuits. He certainly is entitled to that preference. Still, even recognizing the existence of the minority opinion, it is difficult to understand the concept that "[t]he client may then seek his remedies against the lawyer in ... bar disciplinary proceedings." More important, the dissent relies heavily on a non-existent rule that wilful misconduct by a lawyer justifies dismissal of a client's case. This supposed rule underlies the dissent's rather peculiar argument that we are "encouraging gross negligence on the part of attorneys." The dissent finds its rule in *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). That case, however, relies on "wilful misconduct" by the party whose case was dismissed rather than by counsel. Counsel's failures in that case were secondary. *See id.* at 643, 96 S.Ct. 2778; *see also Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir.1984) (distinguishing its case from *Nat'l Hockey League* in part because in that case, plaintiffs themselves had demonstrated "flagrant bad faith").

463 (9th Cir.1984) (per curiam). Second, judgment by default is an extreme measure and a case should, "whenever possible, be decided on the merits." *Id.* Additionally, our holding makes common sense, as is evident from the facts in the case before us. When an attorney is grossly negligent, as counsel was here, the judicial system loses credibility as well as the appearance of fairness, if the result is that an innocent party is forced to suffer drastic consequences.[12]

The Supreme Court's decision in *Link* does not require a contrary result. While it is true that *Link* states that an attorney's actions are chargeable to the client, the Court expressly declined to state whether it would have held that the district court abused its discretion if the issue had arisen in the context of a motion under Rule 60(b). *See Link,* 370 U.S. at 635–36, 82 S.Ct. 1386; *see also id.* at 632, 82 S.Ct. 1386 (noting that "[p]etitioner never sought to avail himself of the escape hatch provided by Rule 60(b)"). Thus, *Link* does not serve as a barrier to establishing the rule that gross negligence by a party's counsel may constitute "extraordinary circumstances" under Rule 60(b)(6). *See Carter,* 804 F.2d at 807 (distinguishing *Link* upon the same ground); *Primbs,* 4 Cl.Ct. at 369 (distinguishing *Link* as a case concerning trial court's discretion to dismiss a case for failure to prosecute rather than its power to vacate a default judgment).

The difficulty in drawing a line between gross negligence—which is not chargeable to the client—and "ordinary" negligence or neglect—which is—does not discourage us from establishing the former circumstance

as a ground for relief. Although we are aware of the concern that every client will simply argue that his counsel was "grossly negligent," there are two principal reasons why this fear is more imaginary than real. First, there is a similar distinction made regarding the egregiousness of an attorney's conduct in criminal cases. Courts are often called upon to distinguish between run-of-the-mill errors of an attorney and errors so egregious that they necessitate the reversal of a criminal conviction. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, in civil cases, courts have traditionally used the phrase "gross negligence" to signify a greater, and less excusable, degree of negligence, and have required parties alleging gross negligence to establish the existence of a more serious violation of the actor's duty; thus, it is a term with which courts are familiar and which we are compelled to apply with some regularity. *See, e.g., Francis v. S. Pacific Co.,* 333 U.S. 445, 446, 456, 68 S.Ct. 611, 92 L.Ed. 798 (1948); *Barnes Amusement Co. v. Olvera,* 154 F.2d 497, 498 (9th Cir.1946).

■ Having held that an attorney's gross negligence may constitute "extraordinary circumstances" under Rule 60(b)(6), we now proceed to apply this rule to the case at hand. Upon review of the record, it is clear that in this case "extraordinary circumstances" justify the granting of relief from the default judgment. Salmonsen virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so. Salmonsen's inexcusable and inexplicable acts

---

12. Our holding that gross negligence on the part of the attorney may constitute "extraordinary circumstances" under Clause 60(b)(6) does not affect what may be defined as "excusable neglect" under Clause 60(b)(1). The clauses are mutually exclusive. *See Pioneer,* 507 U.S. at 393, 113 S.Ct. 1489. The "ex-

cusable neglect" clause is interpreted as encompassing errors made due to the "mere neglect" of the petitioner whereas (b)(6) is intended to encompass errors or actions beyond the petitioner's control. *See id.* at 394, 113 S.Ct. 1489.

commenced with his conduct surrounding the ill-fated answer to CDS's complaint. After failing to sign a stipulation (already signed by CDS) for an extension of time to file an answer, Salmonsen filed an answer two weeks late. However, he then failed to serve a copy of the answer on CDS, despite repeated requests from CDS and a direct order from the district court. In the end, Salmonsen *never* provided CDS with a copy.

Salmonsen abandoned his duties as an attorney and agent in other areas of the pre-trial work as well. The district court noted that Salmonsen failed to contact CDS for preliminary settlement discussions despite being ordered to do so, failed to oppose CDS's motion to strike the answer, and failed to attend various hearings. Such failures and actions cannot be characterized as simple attorney error or "mere 'neglect.'" *Klapprott v. United States,* 335 U.S. 601, 613, 69 S.Ct. 384, 93 L.Ed. 1099 (1949); *see also United States for the Use and Benefit of Familian Northwest, Inc. v. RG & B Contractors, Inc.,* 21 F.3d 952, 956 (9th Cir.1994). Rather, conduct on the part of a client's alleged representative that results in the client's receiving practically no representation at all clearly constitutes gross negligence, and vitiating the agency relationship that underlies our general policy of attributing to the client the acts of his attorney.

Moreover, Salmonsen explicitly represented to Tani that the case was proceeding properly. *See Jackson v. Washington Monthly Co.,* 569 F.2d 119, 122 (D.C.Cir. 1977) (emphasizing guiltlessness of client regarding default judgment when attorney misled client by reassuring him that litigation was going smoothly); *Primbs,* 4 Cl.Ct. at 369–70 (granting relief in part because counsel "actively misled and lulled his client into believing this case was proceeding smoothly"). Both Salmonsen and Stein repeatedly told Tani that Salmonsen was performing his responsibilities, thereby deliberately misleading him and depriving him of the opportunity to take action to preserve his rights. It was only after the district court had granted CDS's motion to strike Tani's answer and ordered a default judgment against him that Tani received his first inkling of Salmonsen's egregious performance and of his failure to provide him with the representation to which he was entitled. In sum, Salmonsen was grossly negligent in his handling of Tani's defense and he deliberately deceived Tani about the services he was supposed to be performing. In light of these facts, we hold that Tani has demonstrated "extraordinary circumstances" beyond his control that merit relief from the default judgment.

■ The district court suggested that Tani's remedy for his counsel's gross negligence was not relief from the default judgment but rather a separate action for malpractice. Although such an action is indeed a possibility, it is an insufficient remedy to justify foreclosing the possibility of relief under Rule 60(b)(6). *See Primbs,* 4 Cl.Ct. at 370. Relief from a malpractice action often comes after substantial delay, if at all, and it increases the amount of litigation in our courts. *See Carter,* 804 F.2d at 808. Additionally, there is no guarantee that money damages obtained in a malpractice action that results in a verdict years later will serve to alleviate the consequences of the default judgment. For example, here, the fact that Tani may someday receive an award of about two million dollars in a malpractice action would be of little solace to him, given what he may be required to sacrifice now in order to satisfy so financially onerous a judgment. Being subjected to a judgment in the neighborhood of $2,000,000.00 would be enough to cause many individuals to lose their businesses

and their homes, and to effect drastically the educational and other opportunities their spouses and children might otherwise have. Also, of importance, the "remedy" of a malpractice action does not address the critical issue of the court's order barring Tani from using the name under which he has been operating his business for a number of years. Here, Tani desired to continue to use the name, "SmileCare," and to maintain his dental practice under that name. A malpractice action cannot restore retroactively the intangible business benefits that ensue from the continued use of a name that has previously identified a business to the public. Thus, relief under Rule 60(b)(6) may often constitute the only mechanism for affording a client actual and full relief from his counsel's gross negligence—that is, the opportunity to present his case on the merits.

■ As an independent and additional ground supporting the denial of relief, the district court concluded that "[e]ven if Defendant Tani were able to establish ... extraordinary circumstances, relief would still be denied because default was imposed as the result of Tani's culpable conduct." A proper finding of culpable conduct by Tani would be sufficient to justify the district court's refusal to grant a Rule 60(b) motion. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir.1988). Here, Judge Whaley, who denied Tani's motion for relief from default judgment, assumed that Judge Schwartz, the judge who granted the default judgment, "presumably" did so because he found *Tani's* conduct "to be willful or taken in bad faith." However, there is no evidence in the record that Tani's conduct in any way formed a part of Judge Schwartz's justification for ordering the default judgment. To the contrary, the only conclusion that can be drawn from

the record is that Judge Schwartz's decision was based solely on *Salmonsen's* (and possibly Stein's) conduct. At no point during the relevant hearing did Judge Schwartz mention Tani or his behavior, or imply in any way that he was considering Tani or his conduct as a factor, or suggest that his actions were motivated in any part by a desire to sanction Tani. The judge did, however, scold Salmonsen after listening to yet another excuse for his failure to properly proceed with Tani's case. It is clear from the record that any culpable conduct was committed by Salmonsen, not Tani. Because there is no specific finding by Judge Schwartz of bad faith or misconduct on the part of Tani, and no evidence in the record that would justify such a finding by either judge, we hold that the district court's finding of culpable conduct on Tani's part was an abuse of discretion.

In short, we conclude that the district court abused its discretion in refusing to grant Tani relief from the default judgment. Where, as here, an attorney engages in grossly negligent conduct resulting in such a judgment, the client merits relief under Rule 60(b)(6), and may not be held accountable for his attorney's misconduct. In light of this holding, we remand to the district court for reinstatement of the action, including the previously filed answer.[13]

REVERSED and REMANDED.

TALLMAN, Circuit Judge, dissenting.

Today, the Court expands the scope of Federal Rule of Civil Procedure 60(b)(6) by allowing a default judgment against a client to be set aside where his attorney's conduct constitutes gross negligence. Since I am of the opinion that this expansion is unwarranted and that the district

---

**13.** Tani also argues that the district court improperly calculated the damages and attorneys' fees awards. Because of the result we reach, we need not consider those questions here.

court did not abuse its discretion in finding that Tani had not shown that circumstances beyond his control prevented his participation in the litigation, I respectfully dissent.

Rule 60(b)(6) provides that a default judgment may be set aside where "any other reason justifying relief" exists. "In order to bring himself within the limited area of Rule 60(b)(6) a petitioner is required to establish extraordinary circumstances which prevented or rendered him unable to prosecute [his case]." *Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir.1971) (per curiam). Rule 60(b)(6) is to be used "sparingly as an equitable remedy to prevent manifest injustice ... [and] only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.1993). Thus, relief under Rule 60(b)(6) should only be granted where the moving party is able to demonstrate "that circumstances beyond its control prevented timely action to protect its interests." *Id.*

Attorney misconduct, regardless of how it is characterized, does not constitute an "extraordinary circumstance" beyond a litigant's control that would prevent that litigant from timely pursuing his cause of action. Litigants are "considered to have notice of all facts known to their lawyer-agent" and have a duty to "keep track of the progress of their lawsuit." *Ringgold Corp. v. Worrall*, 880 F.2d 1138, 1141–42 (9th Cir.1989). As the Supreme Court stated in *Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (internal quotations omitted),

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion

would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and considered to have notice of all facts, notice of which can be charged upon the attorney.

While acknowledging the validity of the principles summarized above, the Court attempts to carve out an exception for cases where an attorney's misconduct amounts to gross negligence. Although the Court is validly concerned that "an innocent party is forced to suffer drastic consequences" of his attorney's misconduct, *see* Slip Op. at 3760, the Supreme Court has repeatedly made clear that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Link*, 370 U.S. at 633, 82 S.Ct. 1386. This language clearly encompasses the conduct at issue here. Regardless of whether attorney misconduct is characterized as gross negligence or mere negligence, the client is bound by such unexcused conduct. *See Dickerson v. Board of Educ.*, 32 F.3d 1114, 1118 (7th Cir.1994) (stating that "counsel's negligence, whether gross or otherwise, is never a ground for Rule 60(b) relief"); *Heim v. Commissioner*, 872 F.2d 245, 248 (8th Cir.1989) (concluding that "any errors committed by [counsel], even accepting the designation of gross negligence, do not constitute an adequate showing of 'exceptional circumstances' ").

The Court looks to agency principles to support its holding that an attorney's gross negligence constitutes extraordinary circumstances under Rule 60(b)(6). *See* Slip Op. at 3761–62. It reasons that, when an attorney's conduct rises to the level of gross negligence, he is no longer serving the interests of his client. Therefore, any consequences suffered as a result of an attorney's gross negligence should not be imputed to the client since the attorney-

client relationship has effectively been severed. This argument is unavailing.

Clients, as principals, are bound by the actions of their chosen agents, whether those actions are characterized as wilful misconduct, *see National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 640–42, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam), or mere negligence, *see Pioneer Inv. Servs. Co. v. Brunswick Assoc.,* 507 U.S. 380, 396–97, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Link,* 370 U.S. at 633–34, 82 S.Ct. 1386. While these cases did not involve the gross negligence at issue in the Court's opinion, "why should the label 'gross' make a difference to the underlying principle: that errors and misconduct of an agent redound to the detriment of the principal (and ultimately, through malpractice litigation, of the agent himself) rather than of the adversary in litigation?" *United States v. 7108 W. Grand Ave.,* 15 F.3d 632, 634 (7th Cir. 1994).

By expanding the scope of Rule 60(b)(6) to allow a default judgment to be set aside where an attorney has demonstrated gross negligence, the Court is essentially stating that mere negligence and wilful misconduct, but not gross negligence, may serve as the basis of a default judgment. This simply does not make sense. · Negligence and wilful misconduct constitute two ends of the spectrum of attorney error. As noted above, both an attorney's negligence and his wilful misconduct are attributed to his client. Why then, should gross negligence, which falls somewhere in the middle of the two extremes on this spectrum, be treated any differently?

A more rational approach would lead to the conclusion that "[w]hen the polar cases are treated identically, intermediate cases do not call for differentiation." *Id.* As the Seventh Circuit explained, "[n]o lawyer would dream of arguing on behalf of a hospital that, although the hospital is liable in tort for staff physicians' negligence and intentional misconduct, it is not liable for their 'gross negligence.'" *Id.* This argument makes no more sense when the actors involved are an attorney and his client.

Furthermore, by holding that an attorney's gross negligence should not be imputed to the client, while both mere negligence and wilful misconduct are so imputed, the Court is effectively encouraging gross negligence on the part of attorneys. "If the lawyer's neglect protected the client from consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client would not suffer the lawyer would not suffer either." *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir.1986); *see also 7108 W. Grand,* 15 F.3d at 634 ("A distinction between ordinary and gross negligence would put an end to 'mere' negligence in federal litigation but would create a land office business in gross negligence."); *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234, 238 (D.C.Cir. 1964) (citation omitted) (Miller, J., dissenting) ("If courts say that counsel for defendant can neglect without excuse their clients' business but no ill effects to the clients will be permitted to result from this negligence, complete chaos in judicial proceedings will surely result.").

Simply basing the determination of whether a default judgment may be set aside on the label attached to an attorney's misconduct is unworkable. A more rational and uniform result requires holding the client responsible for all of his attorney's conduct, regardless of whether that conduct constitutes mere negligence, gross negligence, or wilful misconduct. The client may then seek his remedies against the lawyer in malpractice litigation and bar disciplinary proceedings.

While application of this rule may result in some inequity in the case at hand, "[c]lients have been held to be bound by their counsels' inaction in cases in which the inferences of conscious acquiescence have been less supportable than they are here, and when the consequences have been more serious ... Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit." *Link,* 370 U.S. at 634 n. 10, 82 S.Ct. 1386 (citations omitted).

Tani is not left without a remedy. As the Supreme Court has noted, where an attorney's conduct "falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Id.* Although the Court believes that such a remedy would be inadequate for a litigant whose case has been dismissed, keeping Tani's suit alive merely because he should not be forced to suffer the consequences of his attorney's negligence, whether gross or not, would simply be visiting the sins of Tani's lawyer upon the opposing party. *See Link,* 370 U.S. at 634 n. 10, 82 S.Ct. 1386.

Tani cannot credibly argue that the actions of his attorney, whether negligent, grossly negligent, or intentional, were extraordinary circumstances, *beyond his control,* that prevented him from taking timely action in the case below. Regardless of where on the spectrum of conduct an attorney's action falls, the action is attributable to the client, and therefore cannot provide a valid basis for setting aside a default judgment under Rule 60(b)(6).

I believe that the denial of Tani's motion to set aside the default judgment was within the discretion of the district court and that this Court's new extension of Rule 60(b)(6) is unwarranted. I respectfully dissent.