FILED

NOT FOR PUBLICATION

Mar 25 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-13-1282-TaKuPa |
| MARCELO BRITTO GOMEZ, | Bk. No.   11-26905-TD |
| Debtor. | Adv. No.  11-02360-TD |
| CARTER STEPHENS, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| MARCELO BRITTO GOMEZ; UNITED STATES TRUSTEE,[**] | |
| Appellees. | |

Argued and Submitted on February 20, 2014
at Pasadena, California

Filed - March 25, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding

Appearances:    Appellant Carter Stephens, pro se; Douglas Crowder
of Crowder Law Center for appellee Marcelo Brito
Gomez.

Before:  TAYLOR, PAPPAS, and KURTZ, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**] The United States Trustee did not file a brief, appear at argument, or otherwise participate in this appeal.

1

Carter Stephens sought reconsideration of the bankruptcy court's dismissal of his adversary proceeding against Debtor Marcelo Britto Gomez for failure to prosecute. The bankruptcy court denied the motion; Stephens appealed. This Panel vacated the order denying relief and remanded to the bankruptcy court for findings of fact and conclusions of law. See Stephens v. Smith (In re Gomez), 2012 WL 5938722 (9th Cir. BAP Nov. 28, 2012). On remand, the bankruptcy court supported its decision with a nine-page memorandum decision, from which Stephens now appeals.

We AFFIRM.

## FACTS[1]

Stephens retained attorney Lori Smith to represent him in litigation against the Debtor. After the Debtor filed a chapter 7[2] case, Smith – on Stephens' behalf – filed a § 523(a)(2)(A) and (a)(6) nondischargeability complaint. After filing the adversary complaint, however, Smith's activity in the case was, at best, sporadic.

Pursuant to LBR 7016-1(a),[3] the bankruptcy court scheduled

---

[1] Many of the relevant background facts are detailed in the memorandum decision in the first BAP appeal. See In re Gomez, 2012 WL 5938722, at *1-3.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

[3] LBR 7016-1(a) and (a)(2) provide that the bankruptcy clerk issues a summons and notice of the status conference and that the
(continued...)

2

an initial status conference for September 1, 2011.[4] The Debtor filed an LBR 7016-1 status report prior to hearing; Stephens filed nothing. Similarly, the Debtor and his counsel appeared at the status conference; Smith did not. Neither Smith nor anyone from Smith's office explained her non-attendance to the bankruptcy court (or to Stephens, for that matter). The bankruptcy court continued the status conference to the end of the month.

After the bankruptcy court continued the hearing, it learned that Stephens was present. At that time, it explained to Stephens that Smith failed to appear and also failed to file a required pre-hearing status report. Further, it disclosed to Stephens that the Debtor's status report mentioned a possible settlement, which allegedly failed based on Stephens' change of mind. Stephens expressed surprise at this news and indicated that he was unaware of any settlement discussions.

He then inquired whether he, in fact, was represented by Smith. In response, the bankruptcy court stated:

> Well, you have a couple options. You can fire Ms. Smith and hire another lawyer or you can fire Ms. Smith and represent yourself. One way or the other, you have to do something to move this case ahead from your stand point, and one way or another Ms. Smith has some obligations. I would suggest you start by talking to Ms. Smith. If that's a dead end, then why

---

[3](...continued)
parties are required to file a joint status report at least 14 days prior to each scheduled conference.

[4] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

> don't you [pick] up the phone and call [Debtor's counsel] and see what you can work out.

Hr'g Tr. (Sept. 1, 2011) at 10:10-17.

Stephens advised that he had called Smith multiple times, to no avail, and that he did not trust Smith. The bankruptcy court emphasized that Stephens was obligated as the plaintiff to file a status report as required by the local bankruptcy rules, irrespective of Smith's deficient representation.

Smith filed a status report two weeks after the initial status conference. Both Smith and Stephens appeared at the continued status conference. The bankruptcy court apparently[5] reemphasized the obligations of the parties in the adversary proceeding; it also set a discovery cutoff deadline and ordered Smith to lodge a proposed scheduling order. Smith, in turn, represented that the parties sought mediation and that a proposed mediation order would be filed. Notwithstanding the bankruptcy court's orders and Smith's representations, Smith filed nothing. Sometime during this time frame, however, Stephens filed a complaint against Smith with the State Bar of California.

In anticipation of a continued status conference in February of 2012, Debtor's counsel filed another LBR 7016-1 status report; it was submitted as a unilateral status report.[6] Neither Smith

---

[5] A transcript of the September 29, 2011 hearing was not included in the record on appeal and does not otherwise exist on the adversary proceeding docket.

[6] LBR 7016-1(a)(3) provides that if a party fails to cooperate in preparing a joint status report and an answer has been filed, the parties must each submit a unilateral status

(continued...)

4

nor Stephens filed a status report.

The Debtor next moved to dismiss the adversary proceeding with prejudice pursuant to LBR 7041-1 and Civil Rule 41(b). Among other things, he argued that Stephens' failure to comply with either the discovery deadline or LBR 7016-1 warranted dismissal. The motion to dismiss was scheduled for mid-February. Neither Smith nor Stephens opposed the motion.

At the February status conference, the discussion focused on the disintegration of the attorney-client relationship between Stephens and Smith. After hearing from both Stephens and Smith, the bankruptcy court orally dismissed the adversary proceeding based on lack of diligent prosecution. An order confirming the dismissal was entered shortly thereafter.

Acting pro se, Stephens moved for reconsideration of the dismissal order. He did not obtain a hearing date and did not properly notice or serve the motion. Two days later, the bankruptcy court denied the reconsideration motion by writing "motion denied" on its face. Stephens appealed the denial to this Panel.

A BAP panel vacated the order denying reconsideration and remanded to the bankruptcy court for findings of fact and conclusions of law. On remand, the bankruptcy court prepared a memorandum decision and supported its decision to deny relief from the dismissal order based on both procedural deficiencies and substantive legal grounds. Stephens timely appealed.

---

[6](...continued)
report at least seven days before the scheduled conference.

5

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion by denying the reconsideration motion?

## STANDARD OF REVIEW

We review the bankruptcy court's denial of a motion for reconsideration for an abuse of discretion. <u>Tracht Gut, LLC v. Cnty. of L.A. Treasurer & Tax Collector (In re Tracht Gut, LLC)</u>, 503 B.R. 804, 809 (9th Cir. BAP 2014).

Review of an abuse of discretion determination involves a two-prong test; first, we determine de novo whether the bankruptcy court identified the correct legal rule for application. <u>See</u> <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If not, then the bankruptcy court necessarily abused its discretion. <u>See</u> <u>id.</u> at 1262. Otherwise, we next review whether the bankruptcy court's application of the correct legal rule was clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in inferences that may be drawn from the facts in the record. <u>See</u> <u>id.</u> (internal quotation marks omitted).

## DISCUSSION

**A. The bankruptcy court did not abuse its discretion in denying reconsideration under Civil Rule 60(b) based on procedural deficiencies.**

The bankruptcy court first denied reconsideration based on

6

serious procedural defects, including failure to properly serve and notice the motion and a failure to set it for hearing. Memo Dec. at 2-3. Stephens failed to comply with several Bankruptcy Rules and several local bankruptcy rules. On appeal, he attempts to explain his service errors, but his exhibits show service attempts, as evidenced by postal information on the face of the envelopes, only after he filed the reconsideration motion. Stephens fails to even discuss the other procedural defects identified by the bankruptcy court.

It is within the bankruptcy court's discretion to enforce the Bankruptcy Rules and local bankruptcy rules. See Price v. Lehtinen (In re Lehtinen), 332 B.R. 404, 412-14 (9th Cir. BAP 2005), aff'd, 564 F.3d 1052 (9th Cir. 2009); see also Weil v. Neary, 278 U.S. 160, 169 (1929) (local rules have the force of law) (citations omitted). Under LBR 9013-1(h), the bankruptcy court was entitled to deem Stephens' noncompliance to be a consent to the denial of the reconsideration motion. The bankruptcy court, thus, did not abuse its discretion in denying reconsideration based on Stephens' failure to comply with the local bankruptcy rules and Bankruptcy Rules.

**B.    The bankruptcy court did not abuse its discretion in denying reconsideration under Civil Rule 60(b) on substantive legal grounds.**

The reconsideration motion did not identify the particular legal rule under which it sought relief. On remand, however, the bankruptcy court applied Civil Rule 60(b) (incorporated into adversary proceedings by Bankruptcy Rule 9024). This was not

7

erroneous.[7]  In particular, it referenced the relevant language of Civil Rule 60(b)(1), (b)(2), (b)(3), and (b)(6) in its memorandum decision.

Careful review of Stephens' appellate brief as well as the record below, however, reveals that his arguments rest only on Civil Rule 60(b)(6) and, if liberally construed,[8] the purported existence of "new evidence" under Civil Rule 60(b)(2).  Thus, we do not consider Civil Rule 60(b)(1) and (b)(3) in this appeal; Stephens did not raise theories for reconsideration thereunder either below or on appeal.

**1.  There was no error in denying relief from the dismissal order under Civil Rule 60(b)(6).**

Civil Rule 60(b)(6) provides for relief from a judgment or order based on "any other reason that justifies relief."  This provision serves as an equitable remedy, should be applied sparingly, and is limited to "extraordinary circumstances [that] prevented a party from taking timely action to prevent or correct an erroneous judgment."  <u>Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)</u>, 503 F.3d 933, 941 (9th Cir. 2007) (citation omitted).  As a result, the movant "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper

---

[7] Where a party moves for reconsideration after the time for appeal has passed, the motion is construed as a motion for relief from judgment under Civil Rule 60(b).

[8] We liberally construe a pro se's brief and documents filed.  <u>See</u> <u>Nilsen v. Neilson (In re Cedar Funding, Inc.)</u>, 419 B.R. 807, 816 (9th Cir. BAP 2009).

8

fashion." Id. (citation omitted).

The Ninth Circuit has held that "an attorney's gross negligence [may] constitute[] an extraordinary circumstance warranting relief from a judgment dismissing the case for failure to prosecute under [Civil] Rule 41(b)." Lal v. Cal., 610 F.3d 518, 521 (9th Cir. 2010); see also Cmty. Dental Serv. v Tani, 282 F.3d 1164, 1169 (9th Cir. 2002). An attorney's gross negligence, thus, may insulate a client from responsibility for the attorney's actions. See Lal, 610 F.3d at 524 (gross negligence creates an exception to the principle that "[a]n attorney's actions are typically chargeable to his or her client"); Tani, 282 F.3d at 1171 (an attorney's gross negligence "vitiat[es] the agency relationship that underlies our general policy of attributing to the client the acts of his attorney.").

An attorney's gross negligence, however, only provides an excuse for a failure to properly prosecute a case to an unknowing client. See Tani, 282 F.3d at 1169 ("[C]ourts have concluded that an **unknowing client** should not be held liable . . . [for] an attorney's grossly negligent conduct, and that in such cases sanctions should be imposed on the lawyer, rather than on the faultless client.") (emphasis added). In Lal, for example, the appellant-plaintiff did not know about problems in the prosecution of her lawsuit until approximately eight months after dismissal of the case. 610 F.3d at 522. During those eight months, plaintiff's attorney fabricated status updates and falsely advised that he was properly handling the case. Id. Similarly, in Tani, the appellant-defendant did not know that his attorneys failed to answer the complaint, to participate in a

9

court-ordered settlement, or to oppose the plaintiff's motion for a default judgment until the defendant received the entered default judgment by mail. 282 F.3d at 1167. As in Lal, the defendant's attorneys provided falsified status updates alleging productive progress in the litigation. Id. Thus, in these cases, the clients were ignorant of the true status of their litigation and the deficient conduct of their counsel until well after case dismissal or adverse judgment.

Here, the bankruptcy court found that Smith had been "largely derelict" throughout the adversary proceeding and that Stephens was partly responsible for Smith's inaction. Memo Dec. at 4, 9. Its determination was based on the fact that Stephens was aware of Smith's deficient representation, was warned of his personal responsibility for advancing the litigation and complying with court orders, and, thus, had a full and fair opportunity to avoid the consequences of a failure to properly prosecute his case.

Stephens knew about Smith's failure to properly prosecute his case as early as the initial status conference. He expressly stated at that time that he did not trust Smith. He also learned of Smith's involvement in settlement discussions with the Debtor and his counsel – discussions apparently not disclosed to him. These instances were each and in concert red flags as to the problems with Smith's representation.

At the initial status conference the bankruptcy court further warned Stephens that even though Smith represented him, he, as the plaintiff, was responsible for complying with the local bankruptcy rules. Stephens also attended the continued status conference at the end of September 2011; he, thus, was

10

aware of the discovery cutoff deadline and the bankruptcy court's orders regarding the proposed scheduling order and proposed mediation order.

Contrary to Stephens' claims at oral argument, the facts in this case do not match the most relevant facts in Lal or Tani. There is no indication that either Lal or Tani attended hearings or was otherwise placed on notice that either could not rely on their attorney's alleged actions and representations before case dismissal or default judgment. In other words, Lal and Tani learned of their attorneys' misdeeds long after the adverse outcomes in their cases. Stephens, on the other hand, was completely and continuously aware of Smith's errors months before the adversary proceeding dismissal.

While there is some indication that Stephens sought to retain other counsel, he ultimately failed to do so; and he elected not to proceed pro se. He also suggests that during this time period he received some assurance from Smith that she was protecting his position. But, given Stephens' continuous knowledge of Smith's consistent dereliction of duty, there is no justification for deviating from the general rule that the client is bound by the action or inaction of his attorney. The bankruptcy court did not err in holding Stephens' responsible for Smith's actions and inaction and, thus, it did not abuse its discretion in denying relief under Civil Rule 60(b)(6).[9] The

[9] To be clear, we do not condone Smith's actions, and we take no position as to Stephens' right to claim damages or to otherwise seek relief as a result of her failures to appropriately represent him.

11

dismissal here correctly balanced the right of the Debtor to prompt resolution of the adversary proceeding against Stephens' right to prosecute the case.

**2.    There was no error in denying relief from the dismissal order under Civil Rule 60(b)(2).**

Civil Rule 60(b)(2) provides relief from a judgment or order based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Civil Rule 59(b)."  In general, the evidence must have existed at the time that the judgment or order was entered. See <u>Fantasyland Video, Inc. v. Cnty. of San Diego</u>, 505 F.3d 996, 1005 (9th Cir. 2007); <u>see</u> <u>also</u> <u>Jones v. Aero/Chem Corp.</u>, 921 F.2d 875, 878 (9th Cir. 1990) (relief under Civil Rule 60(b)(2) requires that "the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case.") (citation and quotation marks omitted).  In other words, the evidence must be "newly discovered" by the movant rather than simply "new."

We interpret Stephens' argument on appeal as being based on the fact that a declaration from Smith dated June 11, 2012; his own declaration; and other disciplinary documents from the State Bar of California relating to his state bar complaint against Smith constitute newly discovered evidence of Smith's gross negligence.

None of these documents were before the bankruptcy court at the time that it denied the reconsideration motion.  The record

12

shows that Stephens filed both the declarations and the state bar documents in the adversary proceeding on July 20, 2012 – months after the bankruptcy court denied the reconsideration motion. We do not consider any documents that were not presented to the bankruptcy court in the first instance.[10]

The only document attached to the reconsideration motion was a two-page copy of Smith's attorney record from the state bar's website. Stephens, however, never explains – either below or on appeal – why he could not or did not discover this document sooner and, more importantly, how this document would have aided him in avoiding dismissal.

Included in Stephens' appellate excerpts of record are other state bar disciplinary documents that pre-date entry of the orders dismissing the adversary proceeding and denying reconsideration. Stephens fails to advance any argument as to why he could not obtain these documents, many of which are publicly available on the state bar website, previously. And, again, he fails to explain how the introduction of these documents would have changed the outcome in his adversary proceeding.

In sum, none of the documents provided by Stephens support Civil Rule 60(b)(2) relief. As a result, the bankruptcy court did not abuse its discretion in denying reconsideration thereunder.

---

[10] In any event, the pertinent state court documents were apparently entered by the state bar sometime in June of 2012 – once again, several months after the bankruptcy court dismissed the adversary proceeding and denied reconsideration.

13

**CONCLUSION**

For the reasons discussed, we AFFIRM the bankruptcy court's decision denying relief from the order dismissing the adversary proceeding.