**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

MAR 30 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FEDERAL TRADE COMMISSION;
STATE OF NEVADA,

          Plaintiffs-Appellees,

  v.

SHAD COTTELLI, FKA Shad Applegate,

          Defendant-Appellant,

 and

EMP MEDIA, INC.; et al.,

          Defendants.

No.   20-15717

D.C. No.
2:18-cv-00035-APG-NJK

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted March 9, 2021
Las Vegas, Nevada

Before: NGUYEN and BENNETT, Circuit Judges, and HARPOOL,[**] District
Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable M. Douglas Harpool, United States District Judge for
the Western District of Missouri, sitting by designation.

Defendant Shad Cottelli appeals the district court's denial of his motion to set aside the default judgment in favor of the Federal Trade Commission and the State of Nevada (collectively, the "FTC") on their allegations that Cottelli violated Section 5 of the FTC Act, 15 U.S.C. §§ 45(a), 45(n), and similar provisions of Nevada law. Cottelli argues that the judgment is void for lack of personal jurisdiction and should have been set aside for good cause, and that the $2 million damage calculation was erroneous. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. The district court did not err in rejecting Cottelli's argument that it lacked personal jurisdiction. Reviewing de novo, *SEC v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007), we hold that service of process by email here, as pre-approved by the district court pursuant to Federal Rule of Civil Procedure ("Rule") 4(f), was "reasonably calculated . . . to apprise [Cottelli] of the pendency of the action and afford[ed him] an opportunity to present [his] objections," *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (quotation marks and citation omitted), and otherwise comported with the requirements of Rule 4(f).

"[T]he Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." *Id.* at 1017. The record demonstrates that the FTC appropriately tried to reach Cottelli through traditional means in connection with a

2

pre-litigation civil investigative demand and exercised at least reasonable diligence. Like in *Rio Properties*, because Cottelli used "the modern e-business model and profited immensely from it," and listed an email as a means of contact for his online business, it was reasonable for the district court to authorize service of process via email. *See id.* at 1017–18. And as the record demonstrates, service through at least one of the four approved emails, which the FTC and court reasonably believed was Cottelli's, did not generate a "bounce back" email. *See Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA CV 15-0246, 2016 WL 1251008, at *3 (C.D. Cal. Mar. 25, 2016) ("Many cases have found service of process by email to be reasonably calculated to provide actual notice when the test email is not returned as undeliverable or bounced back.").

There is also neither evidence in the record nor any reasoned argument that service violated any international agreement or foreign law in contravention of Rule 4(f). Indeed, as the district court found, Cottelli's globetrotting and evasive behavior would have made it difficult for the FTC to establish the lack of any such agreement given that it could not identify where Cottelli was. *See Neumont Univ., LLC v. Nickles*, 304 F.R.D. 594, 600 (D. Nev. 2015).

Finally, Cottelli waived his minimum contacts argument because he did not raise it below. In any case, Cottelli and EMP Media, Inc. had relevant contacts with Nevada at the time of the wrongdoing, and as the district court found, Cottelli's

behavior was indicative of his actively evading service of process. Cottelli's multiple relocations and the various alleged MyEx.com ownership changes did not strip the District of Nevada of jurisdiction.

2. The district court did not abuse its discretion in denying Cottelli's motion to set aside the default judgment for good cause pursuant to Rule 60(b)(6). *See Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1167 n.7 (9th Cir. 2002). Because at least one of the factors identified in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam)[1] applies here, Cottelli cannot establish good cause to set aside the default judgment. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985) (finding that any single factor that weighs against relief is sufficient to deny it).

Cottelli moved to set aside the default judgment twenty-one months after it was entered, and six months after he admits he learned of the judgment. The record shows that the FTC destroyed the sensitive evidence pertaining to the victims of MyEx.com after resolution of the case and pursuant to document-management practices. The FTC would need that now-destroyed evidence to prove its case. Given these facts, the district court did not abuse its discretion in finding that the

---

[1] (1) Whether the FTC will be prejudiced by setting aside the default judgment; (2) whether Cottelli had a meritorious defense; and (3) whether Cottelli's culpable conduct led to the default. *See Falk*, 739 F.2d at 463.

FTC would be prejudiced if the court set aside the judgment, as it was reasonable for the FTC to destroy the evidence to protect the victims' privacy. We need not consider the other factors as prejudice is sufficient to deny relief.

3. We reject Cottelli's contention that the district court abused its discretion in awarding a $2 million judgment in favor of the FTC. First, the record is replete with evidence gathered through the FTC's investigative efforts linking Cottelli to MyEx.com. Second, Cottelli offers no evidence to rebut the claim based on evidence and the district court's finding based on the same evidence that the $2 million award represents the amount collected in extortion fees through MyEx.com—specifically, fees paid by more than 5,070 victims.

**AFFIRMED.**